In re Robert L. BROWN, Debtor.

Bankruptcy No. 93–13786.

United States Bankruptcy Court, E.D. Tennessee.

Feb. 24, 1995.

Thomas E. Ray, Chattanooga, TN, for debtor.

David G. Epstein, Special Counsel, Atlanta, GA, for trustee.

## MEMORANDUM

JOHN C. COOK, Bankruptcy Judge.

This case is before the court on the trustee's objections to the exemptions claimed by the debtor and on the debtor's motion to strike the trustee's objections for untimeliness. After considering the briefs of the parties, the evidence presented at a hearing, and the argument of counsel, the court is of the opinion that the debtor's motion to strike objections should be granted.

### I.

The facts are undisputed. This case commenced as an involuntary Chapter 7 on Octo-

ber 12, 1993. On January 14, 1994, the debtor converted the case to Chapter 11, filing his schedules, including the claim of exemptions now at issue, on January 18, 1994. An Official Unsecured Creditors Committee was appointed on February 4, 1994, and the meeting of creditors required by 11 U.S.C. § 341 was held and concluded on February 8, 1994. On June 2, 1994, the court appointed a Chapter 11 trustee, who filed objections to the debtor's claimed exemptions on June 14, 1994, some eighteen weeks after the conclusion of the original meeting of creditors.

The debtor's Chapter 11 case was converted back to Chapter 7 on October 19, 1994, before the trustee's objections were heard, and another meeting of creditors was held and concluded in the new Chapter 7 on November 15, 1994. Three days later, on November 18, 1994, the Chapter 7 trustee filed an "Amended Objection to Claim of Exemptions," which repeated the objections previously made in the Chapter 11 case and added some others. On December 15, 1994, the debtor filed a motion to strike all the trustee's objections to his exemptions.

The principal issue in this case is whether any of the objections to the debtor's exemptions were timely filed. More particularly the issue is whether the 30–day period allowed by Fed.R.Bankr.P. 4003(b) for filing objections to exemptions expires forever once it has run out in a Chapter 11 case, or whether it is retriggered somehow to run anew when the Chapter 11 case is converted to Chapter 7 and a new meeting of creditors is held.

## II.

### A.

■ The problem in this case is how to interpret Fed.R.Bankr.P. 4003(b), which reads in pertinent part:

(b) Objections to Claim of Exemptions. The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant

to Rule 2003(a) or the filing of any amendment[1] to the list or supplemental schedules unless, within such period, further time is granted by the court.[2]

In a case in which there has been only one meeting of creditors, the rule is clear and simple to apply. However, where more than one meeting of creditors may be held, such as in cases involving conversions between chapters, the question arises whether the 30–day period mentioned in Rule 4003(b) closes once and for all after the first meeting of creditors, or whether a new period for objections begins to run after *any* meeting of creditors. The question is a crucial one because 11 U.S.C. § 522(*l*) provides that, as to the debtor's list of exemptions, "[u]nless a party in interest objects, the property claimed as exempt on such list *is exempt.*" (Emphasis added.) No objections to the debtor's list of exemptions were filed in the 30 days following the conclusion of the meeting of creditors in the Chapter 11 phase of this case, and the Chapter 11 trustee's objections filed 18 weeks after the meeting of creditors were obviously untimely under Rule 4003(b). Therefore, unless a new window for objections opened after conversion and after the meeting of creditors in the Chapter 7 case, all the trustee's objections are untimely, even the amended objections filed within three days of the Chapter 7 meeting of creditors.

The analysis of this problem must begin with *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), in which the Supreme Court held that a trustee in a Chapter 7 case could not successfully object to a debtor's claimed exemption after Rule 4003(b)'s time period had run, even though the debtor had no colorable basis in law for claiming the exemption. The Court viewed the time period as important for purposes of finality and strictly enforced it, declining to follow a line of cases holding that courts had discretion to invalidate exemptions after expiration of the 30–day period if the debtor did not have a good faith or reasonably disputable basis for claiming them. *Id.* at 643–44, 112 S.Ct. at 1648. Re-

---

1. The debtor has never amended his list of exemptions.

2. No extension of time was asked for or granted.

plying to the trustee's argument that the Court's refusal to follow those cases would encourage abusive, bad faith exemptions by debtors, the Court stated, "Congress may enact ... provisions to address the difficulties that [the trustee] predicts will follow our decision. We have no authority to limit the application of § 522(*l*) to exemptions claimed in good faith." *Id.* at 643–46, 112 S.Ct. at 1648–49.

*Taylor*, a Chapter 7 case throughout, did not involve conversion among the chapters of the Code, and so it cannot directly solve the problem presented by the present case. *Taylor* does, however, stand for the idea that courts should be wary of modifying the operation of Rule 4003(b) for policy reasons they deem expedient, and in that regard *Taylor* may be particularly pertinent to this case.

The trustee's main argument is drawn from cases, all decided after *Taylor*, in which bankruptcy courts have held that a new time period for objections must arise after conversion to Chapter 7 because, prior to conversion, no party in interest in a Chapter 11 (or a Chapter 13) had much interest in reviewing or contesting the debtor's claimed exemptions. For example, the court in *In re Havanec*, 175 B.R. 920, 924 (Bankr.N.D.Ohio 1994), found that

> [c]ertainly the realities of bankruptcy administration militate in favor of finding a new objection period after a case is converted to chapter 7. Otherwise, the chapter 7 trustee will have no opportunity to object to claims. That job will necessarily be left to chapter 11 creditors who are likely to have neither the interest nor expertise to do so. As noted previously, the chapter 11 process is focused on the debtor's development of a plan of reorganization in which exemptions usually play a minor role. On the other hand, the chapter 7 trustee is charged with the responsibility to review exemptions. In light of *Taylor v. Freeland & Kronz*, supra, which precluded collateral attack after the 30-day bar date on exemptions claimed in bad faith, it is important that the chapter 7 trustee have the right to object to exemptions after the case is converted.

Similar reasoning was employed in *In re Bergen*, 163 B.R. 377, 379 (Bankr.M.D.Fla. 1994), wherein the court stated:

> In Chapter 11, without a trustee to object to the exemptions the debtor claims, objections must be made by creditors. In fact, the exemptions may be of little importance to a creditor in the early stages of a Chapter 11 case, especially if it is receiving an acceptable distribution under the plan.
>
> ... It is highly probable a creditor would be more aggressive in a Chapter 7 and scrutinize a debtor's exemptions because the exemptions in a Chapter 7 case have a direct short-term impact on distribution. When exemptions are claimed in a Chapter 11 case, a successful objection generally does not create an increased share to the creditor objecting.

Thus, creditor viewpoint and context are paramount, and Chapter 11 creditors cannot be expected to "scrutinize" the debtor's exemptions because "the exemptions are not of *immediate* importance to creditors, and may only be relevant in the context of best interests of the creditors under 11 U.S.C. § 1129(a)(7)." *Id.* at 379–80 (emphasis added). Exemptions, in this view, are "academic" in Chapter 11 cases. *Id.* at 380; *accord Carr v. Weissman (In re Weissman)*, 173 B.R. 235, 236–37 (M.D.Fla.1994) (13/7 conversion); *In re de Kleinman*, 172 B.R. 764, 769 (Bankr.S.D.N.Y.1994) (11/7 conversion); *In re Jenkins*, 162 B.R. 579, 580 (Bankr.M.D.Fla.1993) (13/7 conversion); *LaRossa v. Leydet (In re Leydet)*, 150 B.R. 641 (Bankr.E.D.Va.1993) (11/7 conversion).

This reasoning, however, is not without its difficulties. First, it obviously does not apply to cases in which a Chapter 11 trustee has been appointed in time to object to exemptions or obtain an extension of time in which to do so. Not many Chapter 11 trustees are unaware of the possibility that the case could end up in Chapter 7, since so many do.

Second, the possibility that a Chapter 11 case may be converted to a Chapter 7 case is surely known to many creditors, particularly the sophisticated creditors of the Official Unsecured Creditors Committee in this case, the bulk of whom are professional creditors

with competent legal counsel.[3] The viewpoint cases seem to assume that no Chapter 11 creditor could forecast the possibility of a conversion, although it happens frequently and is set out as the debtor's right in 11 U.S.C. § 1112. The idea that creditors should get a second chance to object because it is not normal for them to worry much about exemptions in Chapter 11s is a questionable one: the usual legal rule is that parties in interest in any case must know the law and foresee its consequences or suffer them. In bankruptcy, not even a pro se creditor would be excused from compliance with a rule or statute despite his truthful explanation, "I just didn't think about it."

Another and more serious problem with the viewpoint cases is their tendency to limit § 522(l) in contravention of *Taylor.* As previously pointed out, the Supreme Court in *Taylor* held that attempts by lower courts to limit a debtor's exemptions to those claimed in good faith operated to amend 11 U.S.C. § 522(l), which contains no such limitation: once the time for objections has run, the statute provides that the property "*is* exempt." (Emphasis added.) The trustee, and the cases he relies on, set up an artificial distinction between "academic" exemptions, which are claimed by debtors in Chapter 11s and 13s, and real exemptions (those ·with a direct impact on distribution), which are claimed in Chapter 7s. Because the Chapter 11 exemptions are not real under this theory, creditors ought not to have to object to them until they become real in the converted case. The problem, of course, is that § 522 makes no such distinction anywhere within its numerous provisions, and § 522(l) purports to apply to all exemptions in every kind of case in which they may be claimed. After *Taylor,* it seems unwise to attempt the judicial amendment of § 522(l) by limiting the finality of its operation to (a) cases in which a Chapter 7 trustee has had the opportunity to pass on the debtor's exemptions or (b) closed Chapter 11 and 13 cases.

The viewpoint cases see the issue as one of a free choice between two permissible interpretations of Rule 4003(b), the favored one permitting a second window for objections to exemptions after conversion to Chapter 7. They believe that "[n]othing· in the language of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure compels the choice of one result or the other." *In re Havanec,* 175 B.R. at 923; *accord In re Bergen,* 163 B.R. at 380 ("There is nothing in the Bankruptcy Code or Rules which forecloses objections to exemptions subsequent to a meeting of creditors in a converted case."). This court respectfully disagrees and believes the Code presents a serious obstacle to the trustee's suggested interpretation of Rule 4003(b), an obstacle that the viewpoint cases fail to overcome.

In *In re Halbert,* 146 B.R. 185 (Bankr. W.D.Tex.1992), the court was confronted with the issue at bar in almost identical factual circumstances. It held that, once the 30–day period for objections ran in a Chapter 11, the debtor's exemptions were final and could not be reexamined if the case were later converted to Chapter 7. Because by definition exempt property leaves the bankruptcy estate and vests in the debtor, the court reasoned, there would have to be some means of returning the debtor's property to the Chapter 7 estate in order for objections at that point to mean anything. "If the property has already been removed from the estate at some distant point in the past, a current objection in the Chapter 7 would not appear to be a proceeding which would 'recover' the property." *Id.* at 189. How, then, does exempt property get back into the estate? Is it something less than fully exempt to begin with?

There is widespread agreement that the effect of an exemption is to remove property from the bankruptcy estate and to vest it in the debtor. Section 522(b) of the Code directly states that the "debtor may exempt *from property of the estate* the property listed ..." on his schedule of exemptions (emphasis added), and § 1123(c) treats exempt property as the debtor's by providing that exempt property may not be used, sold, or

---

**3.** The Committee was comprised of five major banks and a limited partnership. In five of the six cases, the notice of appointment to the Committee was sent directly to the creditor's attorney, each of whom was experienced commercial or bankruptcy counsel. See debtor's Exhibit 6.

leased as part of a plan proposed by someone other than the debtor unless the debtor has consented. When property is removed from the estate by exemption, it revests in the debtor. The Supreme Court has observed that "[a]n exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991); *accord In re Halbert,* 146 B.R. at 188 ("Once the property is exempted, it is no longer any part of the property of the estate and it 'revests' in the Debtor."); *Redfield v. Peat, Marwick, Mitchell & Co. (In re Robertson),* 105 B.R. 440, 446 (Bankr.N.D.Ill.1989) ("The effect of the automatic allowance of a claim of exemption due to expiration of the 30–day period is, under well-settled case law, to 'revest' the property in the debtor and end its status as 'property of the estate.'"); *Doyle v. Grossman (In re Grossman),* 80 B.R. 311, 314 (Bankr.E.D.Pa.1987) ("Property exempted from the estate revests in the debtor.... A debtor may thereafter use exempt property as (s)he sees fit."); *In re Hahn,* 60 B.R. 69, 73 (Bankr.D.Minn.1985) ("Once a debtor's claim of exemption to property has been allowed by the running of the period for objection to the claim of exemptions under Bankr.R. 4003(b), the property revests in the debtor and is no longer property of the estate."); *Kretzer v. DFW Fed. Credit Union,* 48 B.R. 585, 587 (Bankr.D.Nev.1985) ("Unless a party in interest timely objects, property claimed as exempt is exempted from the bankruptcy estate.... Property exempted from the estate revests in the debtor."); *In re Wiesner,* 39 B.R. 963, 965 (Bankr.W.D.Wisc.1984) ("Once property is exempted from the estate it revests in the debtor, and is no longer part of the estate."); *Berry v. Dial Consumer Discount Co.,* 11 B.R. 886, 890 (Bankr.W.D.Pa.1981) ("Therefore, if property is claimed as exempt initially it becomes property of the estate, but revests in the debtor upon failure by any party to object to the exemption within a specified period of time."); *In re Cruseturner,* 8 B.R. 581, 590 (Bankr.D.Utah 1981) (same); 2 David G. Epstein, Steve H. Nickles & James J. White, *Bankruptcy* § 8–1, at 453–54 (1992) ("'Unless a party in interest objects, the property

claimed as exempt on such list is exempt.' The immediate consequence is that the property leaves the bankruptcy estate and revests in the debtor."). Therefore, unless there is some mechanism for the debtor's property to reenter the bankruptcy estate upon conversion, it would seem that exemptions in the Chapter 11, once considered final and unobjectionable under the rule in *Taylor,* must be considered final and unobjectionable in the converted case as well.

Because all the viewpoint cases are subsequent to *Halbert,* and because *Halbert* directly makes this argument, it is interesting that none of the viewpoint cases attempt to answer it, even if they cite *Halbert* as a contrary case. They seem to assume that something in the conversion process must adjust things so their preferred outcome can obtain, but they do not state what that something is or how it might operate within the Code.

Indeed, in analogous situations where property leaves the bankruptcy estate and vests in the debtor, courts have had no difficulty in recognizing that conversion does nothing to recapture the property. For example, the property of a Chapter 11 estate that has revested in the debtor due to the confirmation of the plan "does not reenter the chapter 7 estate in the event of conversion." *In re Winom Tool & Die, Inc.,* 173 B.R. 613, 619 (Bankr.E.D.Mich.1994); *see also Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.),* 930 F.2d 458, 461 (6th Cir.1991) (holding that Chapter 7 trustee in a converted case could not avoid and recover a postconfirmation transfer of property during the Chapter 11 phase because, under § 1141(b), the Chapter 11 property had revested in the debtor on confirmation of the plan, and § 549(a), under which recovery was sought, applied only to the recovery of property of the *estate*). Thus, courts recognize the principle that the revesting of estate property in the debtor means that the property cannot pass over into a Chapter 7 estate on conversion unless the plan so provides. There is no apparent difference between the revesting of property upon confirmation and the revesting of property on account of a successful exemption:

revested property belongs to the debtor. How and why one revesting should be less final than the other is, therefore, unclear.

If the trustee were correct in his insistence that conversion reopens the otherwise closed question of exemptions, some evidence of this effect should be found in the Code or Rules. As has already been pointed out, the Code does not supply the mechanism necessary to return exempted property to the Chapter 7 estate for further administration. Without it, a Chapter 7 trustee's objections to exemptions that have not been timely objected to in the Chapter 11 are invalid. As for the Rules, Fed.R.Bankr.P. 1019(2) deals specifically with the subject of conversion, rerunning the times allowed for filing a claim, objecting to discharge, and objecting to the dischargeability of a particular debt. If a new time period for objections to exemptions began to run upon conversion of a case, one would expect to see it mentioned in Rule 1019(2). It is not there.

For all of these reasons, the court declines to follow the viewpoint cases and will hold with *In re Halbert* instead.[4]

### B.

■ The trustee next points to what he contends are deficiencies in the way the exemptions on the debtor's Schedule C were listed, such as erroneous specification of the law under which some exemptions were claimed, the failure to specify any law under which one exemption was claimed, and the statement that the exempt value of some property was "unknown." He makes two different arguments from his observations.

First, he argues that the court should disallow the exemptions claimed by the debtor

because they were not claimed in good faith. He contends that 11 U.S.C. § 105(a) provides the grounds for such action, correctly pointing out that the Supreme Court did not reach the § 105 issue in *Taylor* because it had not been raised in the courts below. *Taylor*, 503 U.S. at 645–46, 112 S.Ct. at 1649. Section 105(a) provides:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

In *Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473 (1994) (per curiam), the Fifth Circuit rejected this argument, agreeing with its lower courts that in the absence of fraud there was no "abuse of process" that could be corrected under § 105(a). In *Sadkin*, a Chapter 7 case, a creditor filed a late objection to the debtor's claim of exemption, charging that the debtor had no legal basis for the exemption. The bankruptcy court, however, found no fraud on the part of the debtor and denied relief under the "abuse of process" clause of § 105(a). Both the district court and circuit court of appeals affirmed.

■ In the present case, the trustee presented no proof on the question of fraud or abuse of process by the debtor. As a result, there is no evidence of an intention to deceive or take unfair advantage. There is some evidence of sloppiness in completing the debtor's Schedule C, but that is all.

---

4. Some of the viewpoint cases observe that, unless their rationale is followed, postpetition creditors in a Chapter 11 could be slighted procedurally when their administrative expense claims became mere unsecured claims on conversion to Chapter 7. If those creditors had not had a chance to object to the debtor's exemptions in the Chapter 11, they would never get one in the Chapter 7. *In re de Kleinman,* 172 B.R. at 769; *In re Bergen,* 163 B.R. at 380. While it might be argued that postpetition creditors should have a chance to object to everything that had already happened in the case, the fact is that this is unworkable. For example, property may exit a

Chapter 11 estate not only by exemption, but by abandonment, sale, or foreclosure after stay relief. In none of those other instances would a postpetition creditor be heard to complain, after conversion, that it had not had the opportunity to object during the Chapter 11. Postpetition creditors cannot unravel the fabric of time in attempts to recover property that has legally vested in the debtor or someone else long before the postpetition creditor became a creditor. There is simply no mechanism for this in the Code, and so postpetition creditors do business with a Chapter 11 debtor at a certain peril.

There is not even a showing that creditors were misled. This kind of sloppiness does not rise to the level of fraud or abuse of process remediable by § 105. Of course, it may have been objectionable, but, then, no one objected.

■ Under § 105(a), the court may also fashion such orders as are "necessary or appropriate to carry out the provisions ..." of the Bankruptcy Code. The statute, however, "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986). In this case, an order allowing late objections to exemptions would obviously not carry out the provisions of the Code as the court understands them. See discussion in Part IIA hereof.

■ The second argument fashioned by the trustee as a result of alleged deficiencies in the debtor's Schedule C is to the effect that those deficiencies are so egregious that the Schedule C is a nullity and could not operate to exempt the property. The result would be that the property, although scheduled for exemption, would remain in the Chapter 11 estate and there survive conversion by passing over into the Chapter 7 estate.

■ This argument, intended to solve the *Halbert* problem, carries precision too far, for it is generally held that something less than perfection, something that gives adequate notice of the property proposed for exemption, is enough.

Schedule C of Official Form 6, as amended by the 1991 Amendments to the Bankruptcy Rules and Official Forms, requires the debtor to estimate the value of the articles claimed and indicate the law under which the exemption is asserted. The failure of the debtor to observe precisely the requirements of Schedule C in making his or her claim is not fatal, and a lack of specific enumeration of itemization of the articles claimed will not defeat the claim.

3 *Collier On Bankruptcy* ¶ 522.26, at 522–89 (Lawrence P. King, et al. eds., 1994). Even the Advisory Committee note (1983) to Fed. R.Bankr.P. 9009, which is the rule requiring the use of the Official Forms in bankruptcy, states that "[t]he use of the Official Forms has generally been held subject to a 'rule of substantial compliance'...."

The cases bear this out. In *Taylor,* the Supreme Court allowed the exemption for the debtor's unliquidated chose in action even though its value was listed as "unknown" and even though the parties stipulated that the exemption had no colorable basis in law, i.e., that the statutory or constitutional basis listed, if any, was completely wrong. In *In re Hickman,* 157 B.R. 336 (Bankr.N.D.Ohio 1993), the court, following *Taylor,* held that a debtor's failure to state the statutory basis for a claimed exemption did not render the exemption invalid or excuse the trustee from objecting to it in a timely fashion.

Although a prudent debtor would have provided a statutory basis for the exemption, not doing so does not render it an invalid or "bad faith" exemption. The trustee could have, per § 522(*l*), requested additional time from the Court to inquire further into the Debtor's claim. Extra time surely would have been granted.

*Id.* at 339.

■ Nor is it fatal to assign the wrong value to a claim of exemption. In *Allen v. Green (In re Green),* 31 F.3d 1098 (11th Cir.1994), the debtor listed the value of a pending tort lawsuit as $1.00 on both her schedule of personal property and her list of exemptions. The trustee understood that the value assigned was a nominal value and was not misled as to the probable real value of the exemption. Under these circumstances, the Eleventh Circuit, relying on *Taylor,* held that the trustee's failure to object to the claim of exemption resulted in the exemption of the full value of the lawsuit, not just the $1.00 assigned as its value. *Id.* at 1101.

The foregoing cases demonstrate that, in the absence of fraud, deficiencies in the debtor's exemption schedule do not invalidate the exemptions. There is no evidence of fraud in the debtor's exemption schedules in this case, and the deficiencies therein are only such as would put creditors on notice to inquire fur-

ther. Accordingly, the court finds that the exemptions in this case were fully operational and not to be treated as nullities.

### III.

In *Taylor*, the Supreme Court mentioned finality as an important consideration in its decision to sweep aside the judicial amendments it found engrafted on the operation § 522(*l*). Arguably, finality is an even more important consideration in conversion cases because they may last much longer than straight liquidations. If the trustee is right that conversion retroactively destroys the finality of § 522(*l*)'s operation, then years and years may go by in a Chapter 11 case during which the debtor must remain uncertain about what is his and what is not.

The trustee, however, is unable to explain how conversion destroys the finality with which, according to the Supreme Court, § 522(*l*) operates. To do so, he would have to explain how the Code reloads exempted property into the bankruptcy estate upon conversion of a case; but there simply is no mechanism for that, and without it the trustee's suggested interpretation of Rule 4003(b) must be rejected.

Finally, there is no convincing precedent to support the argument that the deficiencies found in the debtor's Schedule C render his exemptions fraudulent and invalid. This kind of deficiency may well be grounds for objection, but no objections were made.

For the foregoing reasons, the court concludes that the trustee's objections and amended objections to the debtor's exemptions are irremediably untimely. Therefore, the debtor's motion to strike the objections is well taken and should be granted. An appropriate order will enter.