## In the Matter of Robert A. WOLF, Debtor.

### Bankruptcy No. 97–41117–WS.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Jan. 31, 2000.

Martin L. Fried, Goldstein, Bershad, Fried & Lieberman, P.C., Southfield, MI, for debtor.

Kenneth A. Nathan, Nathan & Nathan, P.C., Southfield, MI, for Trustee.

## OPINION ON THE ISSUE OF TIMELINESS OF THE TRUSTEE'S OBJECTION TO DEBTOR'S EXEMPTION

WALTER SHAPERO, Bankruptcy Judge.

Debtor filed an individual Chapter 11 proceeding on January 23, 1997. At the

---

time of the filing the Debtor claimed certain exemptions (the principal ones being Debtor's home and a pension plan). A § 341 hearing was held and concluded on February 25, 1997, and no objections to the exemptions were filed within the following thirty (30) day period provided for such under Fed.R.Bankr.P. 4003(b). No plan or disclosure statement was ever filed despite four (4) extensions to do so—the last expiring in March 1998. A motion to convert was filed by the U.S. Trustee on July 2, 1999. The case was converted to a Chapter 7 proceeding on August 19, 1999. A new § 341 hearing was scheduled, held and concluded on September 28, 1999. On October 28, 1999 and thus within the required thirty (30) day period following the conclusion of that (second) § 341 hearing the Chapter 7 Trustee filed objections to the Debtor's exemptions.

The threshold issue is whether or not the objection of the Trustee was timely. That depends on whether there is a second period within which exemptions can be objected to after a case has been converted from an individual Chapter 11 case to a Chapter 7 proceeding. The Trustee argues yes and the Debtor no. The arguments for either result are aptly stated in *In re Havanec*, 175 B.R. 920, 922–24 (Bankr.N.D.Ohio 1994) (yes) and *In re Ferretti*, 230 B.R. 883, 886–91 (Bankr. S.D.Fla.1999) (no) and cases cited therein which need not be repeated in full. There is a fairly even split of legal thinking on the issue at least as noted by the cases cited in the briefs of the parties.[1] In *Havanec*, the conversion was from a Chapter 11 to a Chapter 7, whereas, in *Ferretti*, the conversion was from a Chapter 13 to a Chapter 7. *See* 175 B.R. at 921; 230 B.R. at 884. Whether or not this makes a difference will be discussed.

The provisions at issue include § 348(a) of the Code, which states that "[c]onversion of a case ... constitutes an order for

relief." 11 U.S.C. § 348(a). Rule 2003(a) requires that the trustee "call a meeting of creditors to be held no fewer than 20 and no more than 40 days after the order for relief" in Chapter 7 and 11 cases. Fed. R.Bankr.P.2003(a). Thus, after conversion, a trustee calls a second Rule 2003(b) meeting of creditors, dated from the new order for relief. Rule 4003(b) limits the time to file objections to exemptions to thirty days after conclusion of the Rule 2003(a) meeting. *See* Fed.R.Bankr.P. 4003(b).

The principal arguments advanced by the Trustee depend on finding that Rule 4003(b) is ambiguous. *See Ferretti*, 230 B.R. at 886–87 (questioning whether the reference to "the 2003(a) meeting" in Rule 4003(b) referred to the initial meeting or the second, post-conversion meeting). Having found this ambiguity, the Trustee looks to policy and other sources for guidance and argues (1) given the realities of bankruptcy administration, particularly in the Chapter 11 process, a debtor in possession and the other active participants in that process are not focusing on, and do not have motive, to focus on exemptions; (2) that exemptions normally play a minor role in the Chapter 11 process and then only in individual, as opposed to corporate, cases; (3) the lack of any particular prejudice; and (4) the likelihood that a contrary holding would increase the potential for abuse by encouraging individual debtors to increase their exemptions simply by initially filing a Chapter 11 case and then converting it to a Chapter 7 case, but only after the initial thirty (30) day exemption objection period has run.

Fed.R.Bankr.P. 1019(2) provides "new filing periods" in connection with a conversion from a Chapter 11 or a Chapter 13 case to a Chapter 7 case. Upon such a conversion a "new time period" shall commence pursuant to Fed.R.Bankr.P. 3002, 4004 or 4007, for "filing" (1) claims; (2) a

---

1. Interestingly, of the six or so cited cases favoring debtor's position, two were Chapter 13's converted to Chapter 7, and four were Chapter 11's; of the six or so cited cases favoring the trustee's position, the same division was true.

complaint objecting to discharge; or (3) a complaint to determine the dischargeability of any debt. Debtor's principal argument is that the failure to include objections to exemptions in that list should be interpreted as a clear expression of the rule drafters' intent to exclude any new time period with respect to the "filing" of items not there mentioned, with the result that there would be no new filing period for an exemption objection. That essentially is the classic "expressio unius est exclusio alterius" construction argument, i.e., enumeration of one or more exceptions to a rule implies an intention to exclude any other exceptions. The court in *Ferretti* and others rely on that reasoning. *See Ferretti,* 230 B.R. at 891 (citation omitted). The court in *Havanec,* however, found this "omission" of any reference to an objection to exemptions in Rule 1019(2) "not compelling." The *Havanec* court reasoned that "the draftsmen of Rule 1019(2) might well have concluded that the language of Rule 4003(b)" specifically dealing with exemptions and setting forth its own time requirement, "was sufficiently clear to assure that the trustee could object to claims following the conclusion of the Chapter 7 creditors meeting after the case had been converted." *Havanec,* 175 B.R. at 924. Fed.R.Bankr.P. 4003(b) relating to exemptions is, after all, separate and apart from Fed.R.Bankr.P. 1019(2) and states explicitly when an objection to an exemption must be filed, and, who can file it. It is complete on its face, and as such may be seen as having been designed to cover the waterfront of exemption issues it affirmatively deals with, including objections, without the need to resort or refer to any other rule to determine its meaning or application. As noted it is universal that in a conversion situation a second § 341 hearing is mandated under Fed.R.Bankr.P. 2003 and in fact is held. There are no exceptions in that rule for converted cases. The very importance and purpose of having a second § 341 hearing is materially undercut if the fundamental matter of a debtor's exemptions is somehow determined to be no longer fair game. At the very least one should not divine such a result based almost entirely on a principle of statutory construction, the application of which may be questionable. The cited *expressio unius* maxim

> is not universal, but of limited, use and application. It is an aid to construction, not a rule of law. It is not conclusive, is applicable only under certain conditions, is subject to exceptions, may not be used to create an ambiguity, requires great caution in its application ... [and] is applied only to assist in arriving at the real intention of the lawmakers, where such is not manifest. It may not be used to defeat or override clear and contrary evidences of legislative intent.

73 Am.Jur.2d *Statutes* § 212 at 405–06 (1974) (citations and footnotes omitted). Thus, the failure to affirmatively provide a new filing period for objections to exemptions in Rule 1019(2) should not negate the clear provisions of § 348(a), and Rules 2003(a) and 4003(b).

Assuming, for purposes of argument, that the maxim is of equal force in interpreting a *rule* as it is a statute, its application here requires a closer look. Fed.R.Bankr.P. 4003(b), relating exclusively to exemptions, commences by stating "the trustee or any creditor" may file objections to exemptions. The reference to "trustee" ought to be given effect and considered meaningful. In a Chapter 11 conversion to a Chapter 7 situation, until there actually is a conversion there is normally no appointed "trustee" (and there was not one in this case). The term "trustee" should be given its normal and obvious meaning here. Although a debtor in possession, under § 1107, does have rights, powers, and obligations to perform certain, but not all of the, functions and duties of a trustee, objecting to exemptions would not likely or properly be considered to be among them.[2]

2. In this connection one is reminded of the somewhat analogous controversy under

Indeed given the small incidence of individual Chapter 11 cases to begin with, and the consequent even smaller number of conversions of such to Chapter 7 proceedings,[3] it is more than likely that the drafters of the rule simply did not intend to, or see any need to, deal with the matter at issue (or they felt Fed.R.Bankr.P. 4003(b) covered the matter). The principal point is that a true "trustee" should not be deprived of a specifically given right to object to exemptions purely by operation of a maxim of statutory construction of questionable application.

Additionally and importantly, it should be noted that all three of the referred to "new time period" situations set forth in Fed.R.Bankr.P. 1019(2) have two things in common: (1) they all relate to affirmative actions requiring either the filing of an adversary proceeding complaint or a claim in order to *initiate* dispositive proceedings; and (2) the stated filing time limits all run from the "first date set for the meeting of creditors." In contrast, what is involved here is (1) a *response* to an exemption claim that the debtor has previously filed; and (2) a time limit that dates from "the conclusion of the meeting of creditors." The appropriateness of applying *expressio unius* may be thus seriously questioned where, as here, what is involved (a) is something that does not share the same uniform material characteristics that the three specified "new time period" situations share (i.e., what, for want of a better description, one might call the "only birds (exceptions) of a feather flock together" rule of construction); and (b) is the subject

of a separate rule of presumably equal standing, which standing alone at least, is not ambiguous on its face. The fact that, in the case of an exemption objection the limitation period is calculated from the *conclusion* of the first meeting (as opposed to the date originally set for it) highlights the importance of the creditors and the trustee being afforded full and complete access to information *before* being required to file an objection, and the consequent appropriateness of construing the rules to permit that to occur.

Aside from the fact that time limitations on the filing or initiation of actions are often treated more inflexibly than time limits for answers or responses, there is another maxim of construction that is also arguably applicable. That is the maxim that where there is ambiguity or conflict the warring provisions should be construed, if at all possible, in a way that gives them both effect. In this Court's view Fed.R.Bankr.P. 4003(b) is clear enough on its face to permit or require that it be given its literal effect. At the very least however, it ought not be read out of the scheme of things simply by application thereto of a maxim of construction applied to another rule (which on its face can be fairly read as applying only to the items that rule expressly addresses). Thus both Fed.R.Bankr.P. 4003(b) and 1019(2) can and should be given their literal effect. Similarly that same maxim should also apply to the use of the term "trustee" in Fed.R.Bankr.P. 4003(b), by way of avoiding adoption of a construction

§ 546(a) involving whether or not a debtor in possession is considered a "trustee" for purposes of those time limitations. This Court was among those concluding that a Chapter 11 debtor in possession should not be considered a "trustee," partially on policy considerations not dissimilar to those involved in this case. *See Everlock Fastening Systems, Inc. v. American Steel and Wire Corp. (In re Everlock Fastening Systems, Inc.),* 1993 WL 739640 (Bankr.E.D.Mich.1993).

**3.** In this district about one in ten Chapter 13 cases are converted to a Chapter 7; and,

about one in twenty-two Chapter 11 cases are filed by individuals and most of those individual cases are eventually converted to Chapter 7 cases. The raw numbers are small (i.e. in the first eleven months of 1999, 117 Chapter 11 cases were filed of which five were individuals). The Court is also advised that during the last three years or so, some 480 Chapter 11 cases were filed; 142 were confirmed, 113 were converted and 125 were dismissed and 100 are still pending. Of the 142 that were confirmed, only five were individual cases.

that would effectively preclude a "trustee" from exercising that which the rule explicitly grants to the trustee.

If one is not persuaded by the foregoing, the policy arguments advanced by the Trustee, on balance, dictate a similar result. The Trustee asserts policy arguments that were rejected by Judge Schermer in *Ferretti,* but largely on the basis they were considerations not applicable to a conversion from a Chapter 13 case (which that case involved). First, Judge Schermer pointed to the fact that the 1994 amendments to § 348(f)(2), relating to the effect of a conversion of a Chapter 13 case, "eliminates the policy concern that debtors may use conversion to abuse the bankruptcy process." *Ferretti,* 230 B.R. at 889. Second § 348(f)(1), which covers only a conversion from a Chapter 13 case, sets "the relevant date for determining property of the Chapter 7 estate after conversion from Chapter 13[as] the original filing date." *Id.* In those cases in which policy considerations are deemed material and relevant to the result, the *Ferretti* court noted that, in a Chapter 13 case particularly, the issue of exemptions is important at the outset. This is primarily because § 1325(a)(4) requires a showing that creditors will receive more under the Chapter 13 plan than under a Chapter 7 liquidation. *Id.* at 890. In making that determination, exempt property is eliminated from consideration, so what truly is or is not exempt becomes crucial. Thus, the standing Chapter 13 Trustee, and creditors, are required to focus early and importantly on the issue of exemptions, the determination of which is essential to confirmation and satisfaction of § 1325(a)(4). Indeed in this district the model plan in general use includes a liquidation analysis with separate column(s) setting forth exempt items and values. Under our local rules, debtors must file the Chapter 13 plan when the petition is filed (and thus well *before* the § 341 hearing conclusion date from which the thirty day period to object to exemptions is calculated). This is generally consistent with the national rule requirement that the plan be filed no later than fifteen days after the petition. *See* Fed. R.Bankr.P. 3015(b). This was specifically referred to and emphasized in the *Ferretti* case where the court disagreed with statements in other cases minimizing the incentives or motives in objecting to exemptions at the time of filing or saying that exemption claim served only a "limited purpose" in a Chapter 13 case (though in part such statements were made in the context of deciding whether it is the original filing date or the conversion date that controls exemption eligibility). *See Ferretti,* 230 B.R. at 890 (citing *In re Lyle,* 166 B.R. 972, 973 (Bankr.M.D.Fla.1994)); *see also Stinson v. Williamson (In re Williamson),* 804 F.2d 1355, 1361 (5th Cir.1986) (stating that "the considerations of administration and policy under chapter 13 ... are both fewer and weaker in the context of chapter 11"); *Armstrong v. Lindberg (In re Lindberg),* 735 F.2d 1087, 1089–90 (8th Cir. 1984) (noting the distinctions between the purposes of listing exemptions in chapter 7 and chapter 13 cases, in deciding the controlling date for determining what is property of the estate), *overruled by statute on other grounds as stated in In re Weed,* 221 B.R. 256, 258 n. 4 (Bankr.D.Nev.1998).

This Court agrees with that part of *Ferretti* as to the place and relative importance of exemption considerations in the *Chapter 13* pre-confirmation setting. This case, however, involves a conversion from a *Chapter 11* case. Contrasted with the situation in a Chapter 13 case, the Chapter 11 debtor (individual or corporate) has the exclusive right to a file a plan for 120 days after the order for relief. Furthermore, the 120 day period is very often extended. Meanwhile, the § 341 meeting is required to have been held no later than forty days after the order for relief. *See* Fed. R.Bankr.P.2003(a). Contrasted to the Chapter 13 situation, where the standing trustee is present and is *a,* if not, *the* primary continuous active participant almost from the date of filing, is the individual Chapter 11 case where typically there

is no trustee (and indeed no creditors' committee). Even more importantly, the issue of exemptions does not effectively come into focus or play until *after* a plan is filed and a disclosure statement approved, and after that, at confirmation, and, in effectuation of the § 1129(a)(7) "best interest of creditors" test. Indeed, in a Chapter 11 case, creditors cannot even evaluate the relevance of exemptions until they actually see the liquidation analysis required to be set forth in the disclosure statement. Thus, the relevancy of the exemptions in such situations, and indeed the justification for the filing of an objection, are not apparent until long after the expiration of the forty-day deadline to object to exemptions following the § 341 hearing. Not until the second § 341 hearing, after conversion, is there a trustee who has the incentive, focus, interest and awareness of the importance of the exemption issue, and who is the person charged with administration of the estate, including making objections to exemptions. That is at the core of the policy reasons to (1) differentiate between a Chapter 13 and Chapter 11 conversion situation, and (2) to conclude that, irrespective of whether the case was originally filed as a Chapter 13 or Chapter 11 case, the Chapter 7 trustee in a converted case can timely object to a debtor's exemptions, within the period that runs from the § 341 hearing held in the converted case.

To conclude otherwise and in favor of the Chapter 11 debtor would also in practice and reality require some sort of protective filing of objections to exemptions by some party in interest in absolutely every single individual Chapter 11 case. Such objections would have to be filed at a time when (1) there is no real trustee; (2) it is unreasonable to expect a debtor-in-possession to object; (3) there is no factual basis or context necessary for determining whether such an objection is justified; (4) the only persons really who might have an interest in objecting, or the right to do so, are a creditor body, ninety-nine percent of whom do not attend the § 341 meeting, and thus have no idea what occurred there or what is in the debtor's schedules (including claimed exemptions); and (5) a creditors' committee, if one is even formed, would likely not be in place nor represented, nor be in a position to deal with the exemption objection issue by the objection deadline date. Such a result neither makes sense nor is mandated by the rules.

Debtor argues that a debtor, as early as possible in the administration of the case, must be afforded some finality as to his affairs. Debtor also notes a potential pitfall, where a debtor could easily conclude (after the thirty (30) day objection period ran during the Chapter 11 phase of the case) that he or she was then free to dispose of his or her exempt property, and the complications that might arise if it turned out later during the Chapter 7 period that the property in fact was not exempt. The reasoning and analysis underlying the argument is set forth in *In re Brown*, 178 B.R. 722 (Bankr.E.D.Tenn. 1995). That court first questioned the concept that creditors should be given a second chance to object to exemptions, "because it is not normal for them to worry much about exemptions in Chapter 11s." *Brown*, 178 B.R. at 726. Instead, the court noted that "the usual legal rule is that parties in interest in any case must know the law and foresee its consequences or suffer them." *Id.* The court then went on the point out the "widespread agreement that the effect of an exemption is to remove property from the bankruptcy estate and to vest it in the debtor." *Id.* The *Brown* court concluded, in light of the Supreme Court ruling in *Taylor v. Freeland & Kronz*, that "[t]herefore, unless there is some mechanism for the debtor's property to reenter the bankruptcy estate upon conversion, it would seem that exemptions in the Chapter 11, once considered final and unobjectionable under the rule in *Taylor*, must be considered final and unobjectionable in the converted case as well." *Id.* at 727 (relying on *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992)).

This Court disagrees, for a number of reasons. First, as noted, this Court believes that there is insufficient ambiguity in the applicable rules to even bring into play either policy arguments, or the rather technical arguments about when exempt property was or is property of the estate, in order to achieve what otherwise appears to be an undesirable result. Second, to the extent they do or influence the result, the policy arguments on balance, favor the Trustee's position. Third, individual Chapter 11 cases (the only type in which exemptions can potentially be an issue) are infrequent and it seems doubtful that the framers of the applicable rules wrote them with such cases in mind. Fourth, if a Chapter 11 individual debtor had in fact disposed of exempt property, the impact on third parties whose rights thus acquired might be adversely affected, such might legitimately be something to consider. That apparently is not the case here, however, and this Court believes that the theoretical possibility of such occurring is not sufficient to outweigh the clearer, more realistic and practical arguments in favor of the Trustee's position. Fifth, if third party rights were involved, the more appropriate remedy would be a balancing of a trustee and a third party's rights in a specific factual setting rather than on the wholesale basis that Debtor seeks here. Sixth, the concept expressed in *Brown* that parties must know the law and foresee the consequences at their peril, can be similarly applied to a Chapter 11 debtor who, like this one, never filed a plan and never filed a disclosure statement (or who may file such but never even attempt to have them approved or confirmed and thus never serves them on the parties in interest). The likelihood that such a case would eventually be converted (or dismissed) is sufficiently and comparatively high (i.e.; the likelihood of such "consequences") as to minimize Debtor's theoretical concerns about either finality or disposition of property claimed exempt. Third parties who deal with a debtor are on notice of these possible issues, particularly when acquiring property from a debtor which in most instances in an individual Chapter 11 situation would likely require court approval anyway. Finally, the statement in *Brown* in a sense begs the question. The question is—what *is* the law, the consequences of which creditors or parties in interest (and the debtor) should foresee at their peril? If the law turns out to be what this Court concludes, individual Chapter 11 debtors will know their claimed exemptions will not be finalized until after confirmation, dismissal or conversion—a result that does not appear to impose an undue hardship on a debtor or elevate proper regard for finality over other, more important, considerations.

Finally, it would clearly not be appropriate to have the result determined on the basis of some factual showing that, in a particular individual Chapter 11 case, the issue of exemptions somehow was at the forefront and in the minds of the interested parties from the very beginning, and therefore in that situation, the result should be decided in favor of the debtor. This issue demands a bright line rule because we are dealing with critical time limits, the potential rights of third parties, and matters clearly implicating the efficient administration of bankruptcy cases, particularly those converted after some prior, often substantial, period of administration, as well as the potential rights of third parties.

Accordingly, for the indicated reasons the Court concludes that the Trustee timely filed his objections to Debtor's exemptions and the matter should proceed to a full hearing on the substance of those objections.