**In re John D. BLANTON and Marilyn M. Blanton, Debtors.**

**Bankruptcy No. 94–19872 RJB.**

United States Bankruptcy Court, D. Colorado.

April 29, 1996.

Bruce C. Bernstein, Bruce C. Bernstein, P.C., Denver, Colorado, for Debtors.

Jeffrey A. Weinman, Weinman, Cohen & Niebrugge, P.C., Denver, Colorado, for Trustee, Harvey Sender.

---

MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER came on for hearing on April 16, 1996, on the Motion for Turnover of Property of the Estate to Chapter 7 Trustee filed February 20, 1996, and the Debtors' Objection thereto filed March 15, 1996.

This Chapter 7 case was filed October 4, 1995. At the § 341 meeting of creditors held November 16, 1995, the Trustee expressed concern with three items the Debtors had listed in their documents: (1) the Debtors' claim of a 100% exemption for an annuity valued at over $10,000 with the LaSuisse Life Assurance Society in Switzerland; (2) 9 shares of stock in Disney; and (3) the value and equity in two automobiles.

The Trustee testified that at this § 341 meeting Debtors' counsel (not the counsel appearing herein) had agreed to investigate these matters and contact him in the near future. He further testified that at a social function that occurred on December 2 or December 3, 1995, Debtors' counsel came up to the Trustee and stated he agreed with the Trustee's assertion that the annuity was not exempt and that he would be amending the Debtors' schedules and would arrange for a turnover of the annuity. The time to file a written objection to the Debtors' claimed exemptions expired December 16, 1995, and the Trustee did not file a written objection.

On January 4, 1996, Debtors' counsel wrote to the Trustee (Trustee's Exhibit 3) and stated that the Debtors had sold the Disney stock and that the proceeds of that sale were enclosed. He also submitted two appraisals for the two automobiles owned by the Debtors. Finally he stated as follows:

After looking into the issue regarding the exemption claimed for the annuity claimed on the Petition, the debtors [footnote: The annuity owner is Marilyn M. Blanton only.] believe that you are most likely correct about their annuity *not* being exempt as originally stated in their Petition. Thank you for asking me to research this issue. I learned something new myself. It appears that their annuity can be assigned. At you

request, I will amend the Petition. Please let me know.

The debtors sought information from the Swiss company issuing the annuity after the discussion we had at and after the § 341 hearing. I have enclosed the response about this annuity which I had in my office. The Swiss company was informed of the bankruptcy filing when the information about the annuity was requested. The terms of this annuity seem tantamount to a spendthrift clause. I'm not sure if the debtors can liquidate the annuity under the circumstances.

Because the debtors desire to fully cooperate in the bankruptcy proceeding, the debtors have authorized me to tender all of their rights in the annuity contract to you as Trustee. I have enclosed a copy of the actual contract. Please let me know there [sic] is anything further you may require.

Debtors dispute that they ever authorized their counsel to make the above-quoted representations. Mrs. Blanton testified whenever they tried to contact their counsel they were unable to get through. Instead they would leave messages with a "Judith," a paralegal in his office. Mrs. Blanton testified that she received by FAX a copy of a proposed letter from her attorney to the Trustee on or about December 19, 1994, and that there were so many grammatical errors in it she made handwritten corrections and sent the corrected version back by FAX (Debtor's Exhibit D), and that she telephoned the attorney's office and told "Judith" she did not agree to give up the annuity and that the attorney was *not* to send the letter to the Trustee. She did not so indicate this instruction on the "corrected" version she sent back to the attorney. The thrust of her entire testimony was that she never agreed to surrender the annuity to anyone.

This testimony is not credible in light of other actions taken by Mrs. Blanton. For example, on February 1, 1995, she wrote to the LaSuisse Insurance Co. (Trustee's Exhibit 4) wherein she stated:

As you are aware, my husband and I are in bankruptcy proceedings. I have been directed by the bankruptcy trustee to attempt to withdraw the proceeds of my

**330**

LaSuisse annuity, to be turned over to the Trustee.

Please advise me in writing if I can obtain the proceeds of my annuity for the Bankruptcy Trustee.

Please let my have the answer in writing no later than February 13, 1995 so that I can give the Trustee a response.

This, along with her failure to indicate her alleged adamant stand on the annuity in the draft letter she returned to her attorney, leads this Court to conclude that the position she now takes is not the position she held prior to August 29, 1995, when she wrote to counsel for the Trustee claiming for the first time that under Swiss law she no longer owned the annuity but that it belonged to her daughter. (See Trustee's Exhibit 9.) Thus, the Court finds that the Debtors' attorney was authorized to make the representations he did to the Trustee during the first week of December 1994, and in his letter of January 4, 1995, wherein he reaffirmed those representations, i.e., that the annuity was not exempt and that the schedules would be amended to reflect that agreement.

The Trustee argues that Debtors and Debtors' counsel misled him by agreeing to amend the schedules to reflect the non-exempt status of the annuity which caused him not to file a formal written objection to the claimed exemption, that the Debtors are now equitably estopped from claiming the exemption, and that the annuity should be turned over to him.

█ Debtors, by the present counsel, argue that under *Taylor v. Freeland & Kronz, et al.,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), this Court is precluded *under all circumstances* from inquiring into the validity of a claimed exemption once the 30–day time limit of Bankruptcy Rule 4003(b) has run. A cursory review of that case would seem to so indicate. However, just as important in that decision is the Supreme Court's refusal to rule upon claim under 11 U.S.C. § 105(a) because the issue was not timely presented to the Court. As Justice Stevens stated in his dissent:

I have no doubt, however, that if the debtor or the trustee were guilty of fraud, the Court would readily ignore what it now treats as the insurmountable barrier of "plain meaning." The equities in this case are not as strong as if fraud were implicated, but our power to reach a just result despite the "plain meaning" barrier is exactly the same as it was in *Bailey v. Glover,* 21 Wall 342, 22 L.Ed. 636 (1875). *Taylor v. Freeland & Kronz, et al.,* 503 U.S. at 651, 112 S.Ct. at 1650.

The *Taylor* case cannot be read to foreclose this Court from considering the equities of the case. Here, the Trustee was misled by the Debtors and their counsel to think that the Debtors would amend their schedules which would negate the necessity of filing a formal objection to the claimed exemption. Without more, this Court would find that the Debtors should not prosper from such action.

█ However, to receive equity a party must do equity. In this case the Trustee produced no evidence that after he received the letter from Debtor's counsel dated January 4, 1995 (Trustee's Exhibit 3), he did anything to enforce this agreement to amend the Debtors' schedules. Not only that, but as late as March 25, 1995, the Trustee entered into a written Stipulation To Pay To The Trustee, wherein the Debtors agreed to pay the Trustee over time the non-exempt portion of the two automobiles. The Trustee then filed a Motion for Approval of that Stipulation on April 4, 1995, which Motion was ultimately approved by this Court on April 26, 1995. Nowhere in those pleadings is any mention made of the annuity or of an agreement to amend the schedules. Finally, some fourteen months after the oral agreement to amend the schedules, the Trustee filed the within Motion for Turnover. As trite as it sounds, it is still true that parties, including trustees, cannot sleep on their rights. In this case, the Trustee waited too long to assert his rights under the agreement with Debtors' prior counsel. It is, therefore,

ORDERED that the within Motion is denied.