In re Jimmy H. WIGGINS, Debtor.

W. Ryan HOVIS, Trustee, Plaintiff,

v.

Jimmy H. WIGGINS and First Union Bank, Defendants.

Bankruptcy No. 95–74982–W.
Adversary No. 97–80186–W.

United States Bankruptcy Court,
D. South Carolina.

March 19, 1998.

---

W. Ryan Hovis, Chapter 7 Trustee, Rock Hill, SC, Pro se.

Reid B. Smith, Columbia, SC, for Jimmy H. Wiggins.

Thomas E. Lydon, III, Columbia, SC, for First Union Bank.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the complaint of W. Ryan Hovis, the Chapter 7 Trustee ("Trustee"), seeking a turnover of funds in an Individual Retirement Account ("IRA") consisting of a certificate of deposit in the amount of $3,615.00 and 2,129 shares of Philip Morris stock with a value of $127,245.19 pursuant to 11 U.S.C. § 542.[1] The Debtor and First Union Bank filed answers to the complaint.[2] At the pretrial conference, the parties stipulated that there were no factual disputes and that the legal issue could be ruled upon by the Court upon the submission of a Stipulation of Facts and proposed orders outlining the parties' respective positions. On December 1, 1997, the Stipulation of Facts and the proposed orders were filed with the Court. Although not initially asserted by the Defendant Wiggins, the Court questioned whether the Trustee's failure to object to the Debtor's exemption in the IRA within thirty (30) days following the § 341 first meeting of creditors pursuant to Rule 4003 of the Federal Rules of Bankruptcy Procedure affected the ruling

---

1. Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* shall be by section number only.

2. First Union Bank was named as a defendant because it was presumed to be the custodian of the IRA.

on the turnover complaint. In an effort to give the parties an opportunity to address this issue, the Court conducted a hearing on December 22, 1997 at which time the parties presented additional arguments on this discrete issue. At the conclusion of the hearing, the matter was taken under advisement and the parties were asked to submit proposed orders on the issue. Based upon the arguments of counsel and the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law.[3]

## FINDINGS OF FACT

1. Jimmy H. Wiggins ("Mr. Wiggins" or "Debtor") was born on September 24, 1936. He became 59 years old less than one week after filing his bankruptcy petition.

2. On July 25 1995, Mr. Wiggins rolled over an ERISA qualified pension as a result of termination of his employment with Miller Brewing Company. The Debtor opened a self directed individual retirement account with First Union Bank, consisting of a Certificate of Deposit for $3,615.00 and 2,129 shares of Philip Morris Corporation stock.

3. Mr. Wiggins filed for relief under Chapter 7 of the United States Bankruptcy Code on September 18, 1995.

4. Paragraph 11 of the Debtor's Schedule B listing of personal property, filed with the Chapter 7 petition, discloses an IRA account in the amount of $3,615.00.

5. Paragraph 12 of the Debtor's Schedule B listing of personal property indicates 2,129 shares of "Phillip Morris" [sic] stock with a value of $127,245.19.

6. Schedule C, which is titled property claimed as exempt, does not reference the IRA account, the Certificate of Deposit or the Philip Morris stock.

7. In 1995, this Court's Local Rule 4003.1 stated that "[a]n individual debtor shall list any property claimed as exempt under 11 U.S.C. § 522(b)(2) using Exhibit 1 to this local rule (Debtor's Claim for Property Exemption) which shall be attached as an exhibit to Official Bankruptcy Form B6C".[4] At the time he filed his bankruptcy case, Mr. Wiggins filed an Exhibit 1, "Debtor's Claim for Property Exemption".

8. In the Debtor's Claim for Property Exemption filed with the Chapter 7 petition, schedules and statements, paragraph 10(E) is marked which states as follows:

10. *Debtor's Right to Receive the Following Benefits:* (Check Applicable benefits and attach explanation.)

E. A payment under a stock bonus, pension, profit sharing annuity, or similar plan or contract on account of illness, disability, death, age, or length of service unless,

(i) such plan or contract was established by or under the auspices of an insider who employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under §§ 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 [26 U.S.C. §§ 401(a), 403(a), 403(b), 408, or 409.]

9. In accordance with the directions of paragraph 10(E) of the Claim for Property Exemption which requires that a debtor attach an explanation of the entitlement to benefits, the Debtor attached a letter from Larry A. Jones, Vice President of First Union Bank to Steven M. Calcutt, the Debtor's attorney, which reads in full as follows:

Dear Mr. Calcutt:

This letter is to advise you that Jimmy H. Wiggins (SSN 250–54–3288) opened a self

---

**3.** The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

**4.** Effective on December 1, 1996, that Local Rule was abrogated.

directed IRA at our Southpark Office on July 25, 1995. It is shown on our system as a Qualified Plan Rollover. The account consists of a Certificate of Deposit for approximately $3,600.00 and 2,129 shares of Philip Morris Corporation.

If you need an additional information contact our Southpark Office at 664–2970.

Sincerely,

LARRY A. JONES

Vice President

10. Also attached to the Claim for Property Exemption is a document directed to First Union Bank with the heading "Philip Morris Corporation Deferred Profit–Sharing Plan" which states in full as follows:

In accordance with the instructions received from Jimmy H. Wiggins the following disbursement is being forwarded to you as a "Direct Rollover" from the above named plan and is to be deposited into the eligible plan of:

Jimmy H. Wiggins

4333 Byrnes Blvd

Florence, SC 29506

This Direct Rollover is payable to the trustee of the eligible retirement plan indicated. It is your responsibility to ensure that it is deposited into the account of Jimmy H. Wiggins as indicated on the enclosed check.

Shares, if indicated below, will be forwarded directly to you separately by the transfer agent.

"Direct Rollover" Deposit
2,129.000 shares of Philip
Morris Co. Inc. common stock

| | |
|---|---|
| @ 59.750000 | $127,207.75 |
| Cash | $ 37.44 |
| Total value on deposit | $127,245.19 |

11. On September 21, 1995, the Debtor's attorney corresponded with the Chapter 7 Trustee, stating in pertinent part:

Regarding Mr. Wiggins' personal finances, you will note that he has listed Phillip Morris [sic] stock worth $127,245.19. I have attached to the schedules a letter that I received from First Union National Bank concerning the stock. It is my understanding that this is in an IRS qualified account. The letter from Larry Jones, vice president of First Union, and a Phillip Morris [sic] statement is enclosed and attached to the original schedules ...

On a more personal note, Mr. Wiggins contacted my office prior to filing his schedules and petition to express to me his concerns (as he had expressed prior to deciding to file bankruptcy) about the IRA and about the debt with Joint & Clutch. I enclose for you a copy of my letter dated September 7, 1995, which is self-explanatory. I would appreciate your keeping this letter confidential. If I have made an error in my analysis in preparation of this case, I would appreciate your advising me immediately. If I do not hear from you in this regard, I will assume that the schedules and pleadings look to be in order and that my assessment of the IRA account and Joint & Clutch debt are in fact accurate.

According to the Trustee's affidavit filed on December 18, 1997, a confidential second letter from the Debtor's attorney (which was not presented to the Court) "made one reference to the IRA and that it might be exempt".

12. On October 13, 1995, the Trustee conducted the § 341 first meeting of creditors and declared the case to be an "asset" Chapter 7 case. On the Trustee's § 341 meeting report, he abandoned all property except "inheritance and IRA and 300ZX."

13. No objection to the exemption claimed in the IRA was made by the Trustee or any other party on or before the deadline established by Bankruptcy Rule 4003(b), which was November 12, 1995.

14. On June 17, 1997, the Trustee filed a complaint in this adversary proceeding, Adversary Proceeding No. 97–80186 captioned "Complaint for Turnover of Property" seeking possession of the IRA as property of the estate. The Debtor filed an answer which denied that the IRA was property of the estate and separately denied that

the Trustee was entitled to possession of the IRA.

15. On August 4, 1997, the Court conducted the initial pre-trial conference in this adversary proceeding. On October 27, 1997, the Court conducted the final pre-trial conference at which time the Court was advised by the parties that the only issues in dispute were legal issues and could be addressed by proposed orders and a Stipulation of Facts. Between the pre-trial and final pre-trial conferences, the Debtor retained different counsel to represent him in this adversary proceeding.

16. On December 1, 1997, the parties submitted their Stipulation of Facts and proposed orders.

17. Paragraph Four (4) of the Stipulation of Facts states "[t]he individual retirement account is property of the estate".

18. Paragraph five (5) of the Stipulation of Facts states that "[t]he debtor is claiming an exemption in the individual retirement account pursuant to South Carolina Code § 15–41–30(10)(E) (Supp.1996)."

19. Paragraph six (6) of the Stipulation of Facts states that "[t]he issue to be determined is whether the debtor may exempt the individual retirement account pursuant to South Carolina Code § 15–41–30(10)(E) (Supp.1996)."

20. Based upon the Stipulation of Facts, on December 11, 1997 this Court entered an Order scheduling another hearing to determine if the Trustee's failure to timely object to the Debtor's exemption in the IRA was an issue in the determination of the turnover complaint before the Court. Following the hearing, the Court took the matter under advisement.

## CONCLUSIONS OF LAW

As stated, Mr. Wiggins filed for relief under Chapter 7 of the United States Bankruptcy Code on September 18, 1995. In his schedules and statements, with attachments, he claimed an exemption in the IRA and attached a letter to the Debtor's attorney from the Vice President of First Union stating exactly when the IRA was established and its contents. Therefore, pursuant to Rule 4003 of the Federal Rules of Bankruptcy Procedure, the Trustee had thirty (30) days in which to file an objection to that exemption following the first meeting of creditors which concluded on October 13, 1995.[5] There were no objections filed. Almost two (2) years post-petition, on June 17, 1997 the within complaint for turnover was filed by the Trustee.

The United States Supreme Court has stated that a Chapter 7 trustee can not contest the validity of a claimed exemption after expiration of the Rule 4003(b) thirty (30) day objection period, even when a debtor has no "colorable basis" for the claim.

Section 522(l), to repeat, says that "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." Rule 4003(b) gives the trustee and creditors 30 days from the initial creditors' meeting to object. By negative implication, the Rule indicates that creditors may not object after 30 days "unless, within such period, further time is granted by the court." The Bankruptcy Court did not extend the 30–day period. Section 522(l) therefore has made the property exempt. Taylor cannot contest the exemption at this time whether or not Davis had a colorable statutory basis for claiming it.

Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality. In this case, despite what respondents repeatedly told him, Taylor did not object to the claimed exemption. If Taylor did not know the value of the potential proceeds of the lawsuit, he could have sought a hearing on the issue,

5. Bankruptcy Rule 4003(b) provides in relevant part that, "[t]he trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list or supplemental schedules unless, within such period, further time is granted by the court."

see Rule 4003(c), or he could have asked the Bankruptcy Court for an extension of time to object, see Rule 4003(b). Having done neither, Taylor cannot now seek to deprive Davis and respondents of the exemption.

*Taylor v. Freeland & Kronz*, 503 U.S. 638, 644, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992).

The various circuits have generally applied a strict interpretation of *Taylor. See* 4 *Collier on Bankruptcy*, ¶ 522.05[2][a] (15th ed. rev.1997). The Fourth Circuit recently had the opportunity to apply *Taylor* and interpreted it strictly.

In *Taylor,* the Court held that a trustee is required to object within 30 days, under section 522(*l*) and Rule 4003(b), after a debtor claims an exemption of property from the bankruptcy estate for which she is *not* legally entitled, and that the trustee forfeits his right to later contest the exemption by failing to object. *Id.* at 643–44, 112 S.Ct. at 1648.

*Williams v. Peyton (In re Williams)*, 104 F.3d 688, 690 (4th Cir.1997). *Also see Canelos v. Mignini (In re Canelos)*, 212 B.R. 249, 253 (Bkrtcy.D.Md.1997) ("Unless a party in interest objects to an exemption within 30 days of the originally scheduled meeting of creditors, the property is exempt in the amount claimed" ... "This is true even if the debtor had no colorable basis for claiming the exemption" citing *Taylor* and *Williams*).

The Fifth Circuit Court of Appeals has found that the thirty (30) day objection period is jurisdictional and that the failure of the bankruptcy court to rule within the thirty (30) day period on a trustee's timely motion for an extension of time to file objections to the debtor's exemptions divests the bankruptcy court of jurisdiction to extend the time periods.

Two days before the expiration of the thirty-day period provided for in Bankruptcy Rule 4003(b), the trustee moved for an extension of the deadline for filing objections to the claimed exemptions. On April 8, 1994, the bankruptcy court granted the trustee's motion to extend the deadline for filing objections to exemptions. The debtors appealed, and the district court re-

versed, holding that under rule 4003(b) the bankruptcy court was without jurisdiction to grant an extension of time to file objections to exemptions after the expiration of the thirty-day period prescribed by rule 4003(b). *Lawrence W. Stoulig, Jr. v. Cynthia Lee Traina*, 169 B.R. 597 (E.D.La. 1994). The trustee brings this appeal. We affirm, essentially for the reasons stated in the district court's careful and well considered opinion.

*Stoulig v. Traina (Matter of Stoulig),* 45 F.3d 957 (5th Cir.1995). The Sixth Circuit has similarly found that Rule 4003(b) is jurisdictional in nature.

Rule 4003(b) unambiguously requires that an extension of time be granted within the prescribed thirty-day period. The Rule can only be read to require that an interested party must file a motion for an extension within the prescribed thirty-day period and the court must rule on that motion within the same thirty-day period. Indeed, the rule only implicitly requires that a request for an extension be made within the thirty-day period, while it expressly requires that the court grant such an extension within that period. Moreover, Fed.R.Bankr.P. 9006(b)(3) provides that the court may enlarge the time for taking action under Rule 4003(b) "only to the extent and under the conditions stated in those rules." Thus, Rule 4003(b) should be viewed as jurisdictional.

*Rogers v. Laurain (In re Laurain),* 113 F.3d 595, 597 (6th Cir.1997). The Seventh Circuit Court of Appeals has also found that a trustee's failure to object timely to an exemption is an absolute bar to the consideration of the merits of the exemption regardless of the debtor's knowledge of the trustee's objection to the exemption. *Matter of Kazi*, 985 F.2d 318 (7th Cir.1993). *Also see Matter of Salzer,* 52 F.3d 708 (7th Cir.1995) (failure of a trustee or creditor to object within the thirty days provided by Bankruptcy Rule 4003(b) waives the right to contest the validity of an exemption). The Tenth and Eleventh Circuits also interpret *Taylor* and Rule 4003 for the proposition that an objection by a creditor or trustee to a debtor's exemptions must be timely despite the merits of the right to

the exemption. *See Federal Deposit Insurance Corporation v. Coones (In re Coones)*, 996 F.2d 250 (10th Cir.1993); and *Allen v. Green (In re Green)*, 31 F.3d 1098 (11th Cir.1994).

In the Ninth Circuit, the Court of Appeals follows this strict interpretation but limits it to explicitly claimed exemptions.

> Unless there is a timely objection from a party in interest, any property claimed as exempt by a debtor—regardless of whether the claimed exemption is valid—is automatically exempt under section 522(*l*). See *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). Because the time to object is relatively short, see Bankr.Rule 4003(b), it is important that trustees and creditors be able to determine precisely whether a listed asset is validly exempt simply by reading a debtor's schedules. Given that the debtor controls the schedules, we construe any ambiguity therein against him.

*Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316, 1319 fn. 6 (9th Cir.1992).

The First Circuit Court of Appeals, which has also taken a literal approach to *Taylor*, has found that if there is no objection within the thirty (30) day time period, the debtor is entitled to the exemption; however, that exemption is limited to exactly what the debtor claims as exempt.

> Nothing in *Taylor* intimates that "property of the estate" not plainly listed in Schedule B–4 nonetheless becomes exempt by operation of law under section 522(*l*). See, e.g., *Addison v. Reavis*, 158 B.R. 53, 59–60 (E.D.Va.1993), aff'd, 32 F.3d 562 (4th Cir. 1994); *Seror*, 28 F.3d at 82; *In re Sherbahn*, 170 B.R. 137, 139–40 (Bankr. N.D.Ind.1994); *Ainslie v. Grablowsky (In re Grablowsky)*, 149 B.R. 402, 405–06 (Bankr.E.D.Va.1993).
>
> . . .
>
> True, *Taylor* requires that we interpret and apply section 522(*l*) and Bankruptcy Rule 4003(b) according to their literal intendment. But section 522(*l*) neither states nor implies that property of the estate **becomes property of the kind** the debtor describes on Schedule B–4. Rather, as the Court recognized in *Taylor*, 503

U.S. at 638–40, 112 S.Ct. at 1646, absent a timely Rule 4003(b) objection, property of the estate plainly listed on Schedule B–4 becomes exempt by operation of law under section 522(*l*) without regard to whether it is property of the kind entitled to exemption under section 522(d).

*Mercer v. Monzack*, 53 F.3d 1, 3 (1st Cir. 1995).

However, the First Circuit's *Mercer* decision has been criticized as being too literal.

> To the extent that the *Mercer* court held that the debtor had not adequately given notice of an intent to exempt all of the personal injury claim, its decision is very questionable. Once the trustee was on notice that the debtor had a personal injury claim and intended to claim 100% of his settlement as exempt, the trustee should have objected within the time allowed by the rules if he questioned the exemption. If the debtor had placed a value of "unknown" on the settlement, as did the debtor in *Taylor*, he presumably could have succeeded in claiming any portion that was not exemptible under other provisions. The ability to exempt property should not depend on fine points of listing property on the schedules. Normally, if a debtor lists an asset as having a particular value, the schedules should be read as a claim of exemption for the entire asset, to which the trustee should object if the trustee believes the asset has been undervalued. In any event, the lesson of *Mercer* may be that a debtor who wishes to exempt all of an asset and who does not know the value of the asset should claim as exempt the debtor's entire interest in the asset and list its value as unknown.

4 *Collier on Bankruptcy*, ¶ 522.05[2][a] (15th ed. rev.1997).

In accordance with the language used by the Supreme Court in *Taylor*, the majority of the Circuit Courts which have addressed this issue have interpreted Bankruptcy Rule 4003(b) strictly and have required a timely objection to be filed before a trustee may challenge the claim of exemption and recover property from the debtor. It is with this in

mind that the Court considers the Trustee's arguments.

■ The Trustee initially argues, similar to *Hyman*, that the schedules and statements and attachments in this case are ambiguous because Schedules B and C fail to clearly list the IRA as comprised of $3,615 and the Philip Morris stock, and that such ambiguity should be construed against the Debtor. Two factors, however, cause this Court to conclude otherwise. First, taking all schedules, exhibits and attachments together, it is evident that the Debtor sufficiently disclosed the existence of the funds and shares in the IRA and specifically claimed an exemption in the IRA by marking the form required by this Court's Local Rules at the time. Secondly, while the Trustee argues that the Local Rule form was "not universally used by the Bar nor was its (sic) use universally enforced" as a reason for his failure to rely thereon, the mandatory language of the Local Rule in September of 1995 indicates that it is *the form* on which a debtor claims an exemption under the South Carolina statute. The Debtor's claim of exemption in the funds and stock which comprised the IRA was not ambiguous. The Trustee could determine precisely that there was a claim for exemption in the IRA by a complete review of the Debtor's filing.

■ As a second argument, the Trustee would ask this Court to follow the direction of the First Circuit in *Mercer* and find that because the Debtor claimed an exemption in the IRA pursuant to South Carolina Code Ann. § 15–41–30(10)(E), and because this Court has previously held that to exempt an IRA pursuant to this section there must be a present right to receive payments without penalty, which the Debtor did not have on the petition date, the Debtor has claimed an exemption in something that he does not have and therefore he has nothing to exempt regardless of whether or not a timely objection was filed.

The Court disagrees. In 1995, the Local Rules required use of a form for claiming exemptions in IRAs or similar retirement accounts which did not provide for the statement of an amount or for other modifying language. The method in which a debtor claimed an entire IRA exempt was to mark the form in the blank provided, as Mr. Wiggins did in this case. Without credible evidence to the contrary, the Court finds that the Debtor in this case was asserting an exemption in all of the property comprising the IRA. Therefore, the burden of timely objecting rested on the Trustee.

■ The Trustee next argues that this Court should apply its equitable powers pursuant to § 105 to allow his objection to the exemption.[6] The Fifth Circuit's decision in *Sadkin* provides useful guidance for the proposition that absent an abuse of process, § 105 of the Bankruptcy Code should not be invoked to give relief to a creditor or trustee who missed this deadline.

In the instant case, the use of equitable powers to sustain Perkins' belated Objection would be inconsistent with the operation of Section 522(*l*), Bankruptcy Rule 4003(b), and the Supreme Court's interpretation of these provisions in *Taylor*. Simply put, Perkins missed the explicit thirty-day deadline for filing objections, and Section 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." 2 *Collier on Bankruptcy*, 105.01[3] (Lawrence P. King et al. eds., 15th ed.1994). *Matter of Sadkin*, 36 F.3d at 478. Based upon a review of the facts of this case as shown in the Findings of Fact, the Court does not find that there has been an abuse of process on the part of the Debtor that should invoke the Court's equitable powers pursuant to § 105 to allow the Trustee's objection.

■ Additionally, the Trustee argues that under the facts of this case, the Debtor has waived any argument that the estate is pre-

---

6. Section 105(a) of the Bankruptcy Code provides the following:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

cluded from turnover due to a lack of timely objection to exemption.[7] The Trustee's Affidavit of December 18, 1997 asserts that prior to the submission of the Stipulation of Facts, the parties' real focus was on whether the IRA retained an ERISA character due to its rollover, and therefore was not property of the estate. In essence, the Trustee asserts that he relied on the fact that the Debtor's counsel was primarily arguing that the IRA was not property of the estate rather than that it was exempt, and that such reliance should serve as sufficient excuse for the Trustee's failure to timely object to the exemption.

However, the Trustee's argument is misplaced. Even if the Trustee's position that the IRA was property of the estate was correct, the *Taylor* decision clearly requires a timely objection to the exemption or property of the estate may be exempted out of the Trustee's reach. The analysis of such issues entails a two step process. A determination of whether property is property of the estate or not is the logical first step, but it is one which has no time limit. However, the determination of the allowability of exemptions, a logical second step, has a strict time limit. The Federal Rules of Bankruptcy Procedure require the Trustee to act timely or lose standing to litigate this "second step". There is no evidence in the record before the Court that indicates that the Debtor misled the Trustee or waived his rights to his claim for exemption.

Finally, the Trustee takes the position that a strict interpretation of *Taylor* will result in abuses of the system by debtors. However, as stated by the Supreme Court in dismissing the trustee's argument that the debtor's claim was filed in bad faith and that this strict interpretation of Rule 4003(b) would lead to abuses by debtors and their attorneys, the Supreme Court cited several safeguards inherent in the Bankruptcy Code to prevent such manipulations by debtors.

Debtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings. See, e.g., 11 U.S.C. § 727(a)(4)(B) (authorizing denial of discharge for presenting fraudulent claims); Rule 1008 (requiring filings to "be verified or contain an unsworn declaration" of truthfulness under penalty of perjury); Rule 9011 (authorizing sanctions for signing certain documents not "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"); 18 U.S.C. § 152 (imposing criminal penalties for fraud in bankruptcy cases). These provisions may limit bad-faith claims of exemptions by debtors. To the extent that they do not, Congress may enact comparable provisions to address the difficulties that Taylor predicts will follow our decision. We have no authority to limit the application of § 522(*l*) to exemptions claimed in good faith.

*Taylor v. Freeland & Kronz*, 503 U.S. at 644–45, 112 S.Ct. at 1648–49. Based upon the language of Rule 4003 and its interpretation by the Supreme Court, the Fourth Circuit Court of Appeals and other Circuit Courts as cited above, it is the finding of this Court that the Debtor sufficiently listed and claimed an exemption in the IRA and that the Trustee is now precluded from objecting by not filing a timely objection or timely requesting an extension of time to file an objection.

However, as a mitigating factor, it must be noted that this Court has recently issued an en banc opinion which expressly overrules previous precedents requiring that there must be a present right to receive payments from an IRA, without tax penalty, in order to exempt the IRA. *In re Outen*, 220 B.R. 26 (Bkrtcy.D.S.C.1998). Since in this case the only issue apart from the timeliness of the Trustee's objection is whether Mr. Wiggins could exempt an IRA when he is not entitled to receive payments without a penalty, the Trustee's objection to the claimed exemption

---

**7.** It is noteworthy that the parties own joint Stipulation of Facts which remains before the Court states the issue in this adversary proceeding to be the "debtor's entitlement to the exemp-

tion in the IRA". Such an issue necessarily presupposes the Trustee's standing to challenge that exemption and this Court's jurisdiction to rule upon it.

in the IRA, even if timely filed, would be overruled.

For all of these reasons, it appears that the Trustee's de facto objection to the claimed exemption is untimely and therefore it is,

**ORDERED,** that the Trustee's Complaint for turnover of property in the Individual Retirement Account is denied.

**AND IT IS SO ORDERED.**