**In re Monserrate MONTANEZ, Debtor.**

**Bankruptcy No. 98–43853–R.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

April 15, 1999.

David Lewiston, Southfield, Michigan, for debtor.

Lawrence Friedman, Southfield, Michigan, trustee.

## Opinion

STEVEN W. RHODES, Chief Judge.

In this bizarre case, the Court concludes that to prevent an abuse of process, 11 U.S.C. § 105(a), it must sustain the trustee's untimely objection to the debtor's exemption of a personal residence in which she denies and rejects any interest. The abuse lies in the debtor's attempt, through that denial, to protect herself and her daughter from the potentially severe consequences of the post-petition sale of the home. On the other hand, for lack of evidence, the Court overrules the trustee's timely objection to the debtor's exemption of household goods and wearing apparel.

### I. Procedural History

A detailed review of the procedural history is necessary in the circumstances of this case. Initially, the trustee objected only to the debtor's exemption of household goods and wearing apparel with a value in excess of the statutory limits set forth in 11 U.S.C. § 522(d)(3). Under Bankruptcy Rule 4003(b), this objection was timely filed on May 7, 1998. The meeting of creditors had been concluded on April 7, 1998.

The debtor's response denied that the value of the exempted property exceeded the statutory limits.

At a hearing on May 26, 1998, the trustee requested an opportunity for discovery regarding the exempted personal property and its value. The debtor did not object. Accordingly, the Court adjourned the hearing for that purpose.

At a hearing on June 29, 1998, the trustee disclosed that to investigate the value of the debtor's household goods and apparel, he went to the address of the debtor's residence according to the schedules, and found that she did not reside there then, or at the time of the meeting of creditors. The trustee asserted that after the petition was filed, the debtor had sold the residence for $35,000, and that he was unable to find the debtor or her property.

The Court then inquired of the debtor to determine the debtor's address and to obtain the debtor's consent to the trustee's inspection of her personal property for valuation purposes. The Court then discussed with counsel that the only exemption objection before the Court related to the debtor's personal property, and allowed the trustee three days to file amended objections to address the real property issues.

On July 2, 1998, the trustee filed an amended objection to the debtor's exemptions, claiming only that the value of the exempted residence exceeded the value asserted by the debtor in the schedules.

On July 21, 1998, the debtor filed a response to the trustee's amended objection and a motion to strike the amended objection. Both papers asserted only that the new objection was untimely, citing *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

On August 12, 1998, the trustee responded to the motion to strike, arguing that *Taylor* did not address the bankruptcy court's power under 11 U.S.C. § 105 to

deny an exemption for fraud. In support, the trustee cited this Court's decision in *In re Stinson*, 221 B.R. 726, 728 (Bankr. E.D.Mich.1998).

On August 24, 1998, the debtor filed a second brief in support of her response and motion to strike, arguing that any extension of time to file an exemption objection must be granted in an order entered before the time expires, citing *In re Laurain*, 113 F.3d 595 (6th Cir.1997). In this brief, the debtor disclosed that she valued the home at $12,400 in her schedules based on doubling the state equalized value. This brief further disclosed that the home was purchased "in the debtor's name" in 1993 for $8,000. The brief further stated that in 1994 the debtor had deeded title to her daughter, Luz Montanez, for $1, and that in 1996, Luz Montanez deeded the property back to the debtor for $1. Finally, this brief stated that on March 23, 1998, Luz Montanez deeded her interest in the property to Gloria Colon for $35,000.

On September 2, 1998, the Court heard argument on the motion to strike and took it under advisement. The Court then commenced the evidentiary hearing. Again, a detailed review of the evidence is required to demonstrate the basis of the Court's finding that the debtor denies and rejects any interest in the property that she seeks to exempt. This finding is part of the factual basis for denying the claimed exemption.

After the trustee called Gloria Colon, Steven Gordon and the debtor to testify, the debtor called Luz Montanez, Carlos Guzman, David Lewiston, Dennis Brodsky, William Quirindongo, John Gonzalez and Hector Montanez. The thrust of the debtor's evidence was that the debtor's daughter, Luz Montanez, had originally purchased the home for herself with her own funds, and that although the title was since then in the debtor's name (twice), everyone including the debtor knew, accepted and acted as if the property belonged to Luz Montanez and not to the debtor.

## II. The Evidence

Gloria Colon testified that she purchased 8414 Kirkwood in Detroit in March of 1998 and has lived there since then. She identified exhibit 1 as the cashier's check that she used to purchase the home. The cashier's check is made out to Carlos Guzman for $30,000. She testified that the debtor told her to make it payable to Guzman because the debtor could not have it in her name as she was on SSI. Exhibit 2 is another cashier's check to Carlos Guzman in the amount of $5000. Colon testified that this was for the initial deposit on the house. Again, Colon testified that this check was not made payable to the debtor because the debtor said she could not have anything in her name. The closing occurred at Mr. Gordon's office and the debtor was present. Exhibit 4 is the deed that Colon received at the closing. It is a quit claim deed from Luz Montanez, the debtor's daughter. Later, the debtor's son, Hector Montanez, asked Colon not to say anything to the trustee about the sale, and Colon testified that she felt threatened by him.

Steven Gordon testified that he drafted exhibit 4 at the direction of Luz Montanez. The debtor came to him and told him that her daughter, Luz, was selling a house. No title search was done. Gordon did not recall the closing and did not recognize Gloria Colon in court.

The debtor testified that in a form given to her by her bankruptcy attorney, David Lewiston, before she filed bankruptcy, she stated she owned the home. She testified that she did so only because she was then paying the taxes on the home. Later, her daughter asked her to sell the home, and she arranged the sale to Colon for $35,000. The money went to her daughter, Luz. When asked why her daughter told Colon to pay Carlos Guzman, the debtor responded that "she wanted her money safe because her husband throws it away."

Before the sale to Colon, the debtor went to the register of deeds office on

March 20, 1998, to get the most recent deed. Exhibit 3 is the form she filled out to get it. What the debtor received at that time was not the most recent deed (from Luz Montanez to the debtor in 1996), but rather a copy of a deed from the debtor to Luz in 1994. The debtor testified that she had given the 1994 deed to Luz because Luz paid for the home with her own money. The title was originally put in the debtor's name in 1993 because it was easier for the debtor to do the "leg work," and her daughter "doesn't understand much about home business."

The debtor testified she does receive SSI. She stated that she has no interest in 8414 Kirkwood, because it was her daughter's home.

Exhibit 5 is the 1998 tax bill for 8414 Kirkwood, in the debtor's name. Exhibit A is the deed from Luz Montanez to the debtor dated October 25, 1996, but the debtor testified she did not receive that deed. Luz had previously told the debtor that she was going to put the house back in the debtor's name because she did not want it in her own name. The debtor testified that she mentioned the property in the bankruptcy schedules, not because she owned it, but because she told her attorney that she paid the taxes.

The debtor now lives with her son at a home that he owns.

On cross examination by her own attorney, the debtor denied that she told Colon to pay Guzman because of SSI.

Luz Montanez testified that when she purchased 8414 Kirkwood, the deed was to the debtor, because she did not know "too much about houses." Her mother knew more. In June of 1994, the debtor deeded the property to her, but she could not recall why. In October of 1996, she deeded the property back to her mother because her mother moved into the home at that time. However, this was not so that the debtor would own the home. It was for tax reasons, as to which she could not

be specific. It was also because she was afraid her husband might take it from her.

Luz Montanez further testified that when the house was sold to Colon in March of 1998, the debtor knew the home was in the debtor's name. Luz had the checks made out to Carlos Guzman because he is a friend of the family and she trusted him. She denied that she did not give the money to her mother because of the bankruptcy. Luz testified that the money was in Guzman's account at Comerica Bank, but she spent it all.

She further testified that when she sold the house, she, rather than the debtor, signed the deed to Colon because the title that her mother obtained from the register of deeds office was in her name, not her mother's name.

Carlos Guzman testified that the debtor is his girlfriend. He received the $30,000 check from Colon and deposited it into his bank account. The money was then used to fix up the family's houses, including 8414 Kirkwood, and it is almost gone.

David Lewiston testified that exhibit 6 is the questionnaire that was filled out to complete the debtor's bankruptcy schedules. The debtor told him that she owned 8414 Kirkwood. The value on the schedules of $12,400 is double the state equalized valuation of $6,200. This is a standard valuation process. The debtor stated a value of $10,000 in her questionnaire. He saw her name on the tax bill when preparing her schedules.

Dennis Brodsky testified that he works in Lewiston's office and he represented the debtor at her meeting of creditors. After the debtor's testimony concluded, David Allard, another trustee who was conducting this meeting for the assigned trustee, stated that the value of the home should be investigated. The debtor did not disclose at the meeting that she had just sold the home. If that were true, then in his view, the debtor would have had an obligation to disclose the sale.

William Quirindongo testified that in late 1993, he was dating Luz Montanez, and he knows that she provided the money for the purchase of 8414 Kirkwood. He went with her and her mother to the bank to withdraw the funds for the payment of $6,000 or $7,000, and to the closing. Luz had saved the money from her working.

John Gonzalez testified that he is a real estate broker and appraiser. He did a "drive by" appraisal and concluded that the value of the property in February of 1998 was $13,000.

Hector Montanez, the debtor's son, testified that he did not threaten Gloria Colon.

### III. 8414 Kirkwood

The Court will first address the substantive issues raised by the debtor's exemption of 8414 Kirkwood and then the issues raised by the untimeliness of the trustee's objection.

#### A. *The Substantive Issue*

Initially, it must be noted that this is not the context within which to determine the respective ownership rights of the estate, Gloria Colon, and Luz Montanez to the property at 8414 Kirkwood. *See* Bankruptcy Rule 7001(2) and (9). The evidence received on this issue thus far is highly contradictory and complex, and Gloria Colon and Luz Montanez were not given a proper notice and opportunity to be heard on this issue. Also, neither was represented by counsel at the hearings.

##### 1. *The debtor denies any interest in the property.*

For the present purpose in determining the debtor's right to exempt 8414 Kirkwood, however, the salient fact is that the debtor denies ever having had any interest in that property. She so testified numerous times, and called several witnesses in an extraordinary effort to support her daughter's position on the issue of ownership.

In the face of the debtor's unambiguous position, there are only two facts that might undermine the conclusion that the debtor claims no interest in the property. However, the Court concludes that neither should be given any weight. First, the debtor disclosed the property on schedule A. This might suggest a continuing interest, but the credible evidence establishes that this was done only because the tax bill was in the debtor's name, not because the debtor claims any legal or equitable interest.

Second, it appears that the debtor is the grantee on the last deed in the legal chain of title, exhibit A, which was the deed from the debtor's daughter to the debtor dated October 25, 1996. However, the debtor denied that she knew of that deed, and it was not obtained from the registrar of deeds office until August 26, 1998, well after the bankruptcy was filed. Further undermining the weight that should be given to that deed in this context is that the debtor fully treated the post-petition sale transaction as if the property were owned by her daughter. The debtor neither signed the deed nor received the proceeds. Finally, and most significantly, even after full knowledge of the 1996 deed from her daughter to her, the debtor in court still unambiguously rejected any interest in the property. Accordingly, the Court concludes that the evidence overwhelmingly establishes that the debtor denies any interest in the property and that she fully supports her daughter's claim of ownership.

##### 2. *The debtor cannot legally claim an exemption in property in which she denies any interest.*

In these circumstances, as a matter of law, the Court concludes that it is improper for a debtor to attempt to exempt the property while at the same time denying and rejecting any interest in that property. *See First Bank of Linden v. Sloma (In re Sloma)*, 43 F.3d 637, 640 (11th Cir.1995) (Debtor cannot exempt property that the debtor does not own.); *In re Hartman*, 211 B.R. 899, 903 (Bankr. C.D.Ill.1997) ("It is a fundamental tenet of the law of exemptions that the debtor must

have an ownership interest in the property before an exemption may be claimed."); *In re Luhr,* 205 B.R. 447 (Bankr.S.D.Ga. 1997); *In re de Kleinman,* 172 B.R. 764 (Bankr.S.D.N.Y.1994) (Debtor waived exemption claim in insurance cause of action by voluntarily assigning it to her daughter); *In re Alden,* 73 B.R. 215 (Bankr. N.D.Fla.1986) (Debtor not permitted to exempt tax refund in which her husband had sole rights.). *See also* 11 U.S.C. § 522(g) (Debtor may exempt property recovered by the trustee only if the debtor did not voluntarily transfer the property and did not conceal the property.).

Section 522(d)(1), on which debtor relies for this exemption, allows a debtor to exempt the debtor's aggregate interest, up to the defined limit, in real property used as a residence. As a matter of plain statutory meaning and common sense, a debtor cannot exempt her interest in property and, simultaneously, deny any interest in that property. *See* 11 U.S.C. § 522(d)(1).

The trustee properly notes the fundamental problem here, which, apparently, the debtor recognizes but her attorney does not. *The debtor cannot have it both ways.* If, when the debtor filed bankruptcy, she owned the property, and then sold it to Colon for $35,000 and transferred the proceeds to her boyfriend and her daughter, then each of them would face immediate and very serious problems. These might include substantial claims to recover the purchase price of $35,000 under 11 U.S.C. §§ 541, 542, 549, and 550. The debtor might face a claim to deny or revoke her discharge under 11 U.S.C. § 727. The debtor's exemption in the property and any part of its proceeds might be denied. *See In re Stinson,* 221 B.R. 726 (Bankr.E.D.Mich.1998) (Debtor's exemption in personal injury claim denied where debtor settled the claim before the meeting of creditors without notice.). There might also be criminal liability under 18 U.S.C. § 152.

The debtor's denial of any interest in the property that she seeks to exempt, together with the abuse of process associated with the motivation for that denial—to attempt to avoid the consequences of the post-petition sale—would certainly warrant sustaining the trustee's objection, if it had been timely filed. Thus the issue becomes whether to consider the untimely objection.

### B. *The Timeliness Issue*

Although the debtor disclaims any interest in this property, her attorney both responds to the trustee's objection to her exemption of the property, and moves to strike the objection, on the grounds that the objection was untimely. In support, her attorney cites Bankruptcy Rule 4003(b) and *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280. The trustee relies upon 11 U.S.C. § 105(a).

Bankruptcy Rule 4003(b) allows a trustee 30 days after the conclusion of the meeting of creditors to file objections to exemptions. The debtor's attorney properly notes that the trustee's objection to the debtor's exemption of 8414 Kirkwood was filed more than 30 days after the conclusion of the meeting of creditors, and there was no timely order extending the time. *In re Laurain,* 113 F.3d 595 (6th Cir.1997) (An order extending the time to file an objection to an exemption must be entered before the deadline.).

In *Taylor,* the Supreme Court noted that 11 U.S.C. § 522(1) provides that unless a party objects, the property claimed as exempt is exempt. The Court concluded, "We have no authority to limit the application of § 522(1) to exemptions filed in good faith." *Id.,* 503 U.S. at 645, 112 S.Ct. at 1649. However, the Court specifically declined to consider whether a bankruptcy court has the power to consider an untimely objection to exemption under § 105(a) to prevent an abuse of process. *Id.,* 503 U.S. at 645–46, 112 S.Ct. at 1649.

Thus there are two issues. The first is whether bankruptcy courts have the authority under § 105(a) to consider an un-

timely exemption objection when necessary to prevent an abuse of process.[1] If so, the second is whether that power should be exercised in the context of this case. The Court concludes that bankruptcy courts do have that authority and that this authority should be exercised in the unique circumstances of this case.

1. *Bankruptcy courts have the authority under § 105(a) to consider an untimely exemption objection when necessary to prevent an abuse of process.*

■ The Court's conclusion is based on three considerations: the plain language of the statute, related authority from the Sixth Circuit, and the consistency of this result with accepted limits on § 105(a) power and with *Taylor.*

The language of this section plainly states the bankruptcy court's power to act whenever and however necessary to prevent abuse of process:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

In the same spirit, the Sixth Circuit has confirmed the bankruptcy court's broad authority to address improper conduct. *Mapother & Mapother, P.S.C. v. Cooper (In re Downs),* 103 F.3d 472, 477 (6th Cir.1996) ("Bankruptcy courts, like Article III courts enjoy inherent power to sanction parties for improper conduct.").

■ This result is consistent with the accepted limits on the power of bankruptcy courts under § 105(a). It is established that whatever equitable powers remain in bankruptcy courts can only be exercised within confines of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *In re Highland Superstores, Inc.,* 154 F.3d 573 (6th Cir.1998); *Architectural Bldg. Components v. McClarty (In re Foremost Mfg. Co.),* 137 F.3d 919 (6th Cir.1998); *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443, 1453 (6th Cir.1994). Further, this section does not permit the bankruptcy court to disregard unambiguous bankruptcy code language. *Michel v. Eagle–Picher Indus. (In re Eagle–Picher Indus.),* 999 F.2d 969 (6th Cir.1993); *In re Middleton Arms, Ltd. Partnership,* 934 F.2d 723 (6th Cir. 1991).

■ At the same time, however, the Court must recognize its responsibility under § 105(a) to give meaning to the important Congressional mandate found in this section to prevent a party from abusing the Court's processes. That there are lim-

---

**1.** It appears that no court has decided this issue yet. A few courts have discussed it without actually deciding it. *Coie v. Sadkin (In re Sadkin),* 36 F.3d 473 (5th Cir.1994); *Hovis v. Wiggins (In re Wiggins),* 220 B.R. 262 (Bankr.D.S.C.1998); *In re Blanton,* 197 B.R. 328 (Bankr.D.Colo.1996); *In re Brown,* 178 B.R. 722 (Bankr.E.D.Tenn.1995). The bankruptcy court in *Brown* noted that *Taylor* declined to consider the § 105(a) issue. *Brown,* 178 B.R. at 728. However, the bankruptcy court found that there was no evidence of fraud or abuse of process by the debtor, and concluded that therefore, § 105(a) was not applicable. *Id.* Likewise, in *Wiggins* and *Sadkin,* the courts found no abuse of process warranting use of § 105(a) to allow an un-

timely objection. *Wiggins,* 220 B.R. at 269; *Sadkin,* 36 F.3d at 478.

In *Blanton,* the court held that due to the Supreme Court's refusal to rule upon the § 105(a) claim in *Taylor, Taylor* could not "be read to foreclose [the bankruptcy] court from considering the equities of the case". *Id.,* 197 B.R. at 330. However, the bankruptcy court found that the trustee in the case waited too long to assert his rights. Therefore, the court did not conduct a § 105(a) analysis. *Id.*

This Court is unable to find any case where a court has refused to use § 105(a) to allow an untimely objection when there was fraud or an abuse of process. Neither has the Court found any case where § 105(a) was applied in this context.

its, even significant ones, must not discourage bankruptcy courts from acting when necessary within those limits. The Court concludes that there is significant substance to its statutory authority and responsibility under § 105(a) to act when necessary to prevent abuse, and that in the context of this case such authority is appropriately considered.

Finally, the Court concludes that this result is consistent with *Taylor*. The bad faith objection that the trustee made in that case, and that the Supreme Court held was untimely, was that the debtor had no colorable basis in the statutory exemption provisions for the exemptions claimed. The Court noted that the debtor had fully disclosed the value of the exempted lawsuit at the meeting of creditors. In those circumstances, the Court held that the trustee could have and should have filed a timely objection.

The present case is not only distinguishable, but opposite in significant respects. Unlike the debtor in *Taylor*, the debtor in the present case denies ownership of the asset she seeks to exempt.

Unlike the debtor in *Taylor*, who made a full disclosure regarding the exempt asset at the meeting of creditors, the debtor in the present case disclosed nothing at her meeting of creditors -not the sale of the property, not the disposition of the proceeds, and certainly not her claim that her daughter actually had owned the property.

Unlike in *Taylor*, the debtor in the present case provided no facts to the trustee upon which the trustee could have evaluated whether to file any such objection as would have been legally and factually justified had there been full disclosure. Thus, this is not a case of the trustee "missing" a deadline; rather, it is a case of the debtor concealing information crucial to the administration of the estate. Indeed, during the objection period, the trustee was entirely justified in not filing a timely objection to the debtor's exemption of this property, given her claim of ownership and her claim as to value in schedules A and C.

This exemption claim appeared valid on its face. *In re Bregni*, 215 B.R. 850 (Bankr. E.D.Mich.1997). *See also In re Heflin*, 215 B.R. 530, 533–36 (Bankr.W.D.Mich. 1997) ("[T]he trustee is under no obligation to object where there is an appropriate statutory basis for the exemption and the amount claimed is within the statutory limits.")

And unlike the debtor in *Taylor*, who was not seeking to avoid any consequences, the debtor in the present case is abusing this Court's processes in seeking to avoid the potential consequences of selling estate property before the trustee has had an opportunity to investigate the estate's interest in the matter.

Accordingly, the Court concludes that in the context of this case, the Court's consideration of an untimely exemption objection in order to prevent an abuse of process is required by § 105(a), and is consistent with the established limits on that section and with the interpretation of § 522(1) in *Taylor*.

2. *Denying the debtor's exemption in 8414 Kirkwood is necessary to prevent an abuse of process.*

 Plainly, it would be an abuse of this Court's processes for the debtor to simultaneously exempt property and deny any interest in it. The Court concludes that such a circumstance alone is sufficient to constitute an abuse warranting the exercise of the Court's power under § 105(a) to permit an untimely objection. This is especially so where, as here, the debtor concealed the pertinent facts until after the objection period under Bankruptcy Rule 4003(b).

But there is more here. It is clear that the debtor has rejected any interest in the property not simply because she has made a legal or business judgment to that effect, but also in an attempt to protect herself and others from the potentially severe civil and criminal consequences of the post-petition sale. This Court simply cannot permit the debtor to manipulate its processes

so cavalierly with such ulterior and improper motives.

Accordingly, the trustee's untimely objection should be considered, the debtor's exemption in 8414 Kirkwood should be denied, and the debtor's motion to strike should be denied.

### IV. The Personal Property

The trustee bears the burden of proof under Bankruptcy Rule 4003(c). However, the trustee submitted no evidence in support of his objection to the debtor's exemption of her household goods and clothing. Further, the trustee did not argue the issue in closing argument.

Accordingly, there is no basis in the record to find that this property is worth more than the statutory limit for this exemption under 11 U.S.C. § 522(d)(3).[2] The trustee's objection to the debtor's exemption under 11 U.S.C. § 522(d)(3) is overruled.

### V. Conclusion

The debtor's motion to strike the trustee's untimely objection is denied. The trustee's objection to the debtor's exemption in 8414 Kirkwood is sustained and that exemption is disallowed. The trustee's objection to the debtor's exemption under 11 U.S.C. § 522(d)(3) is overruled.

---

**2.** Although the trustee stated in argument that the debtor had moved this property after filing and never amended her schedules to identify its new location, as required, the trustee never specifically objected to the exemption on that ground.